IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**WAYNE RAY HARRIS**                                                                                               **PLAINTIFF**

v.                                              No. 4:13–CV–221–BSM–BD

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                                              **DEFENDANT**

## Instructions for Recommended Disposition

The following recommended disposition will be sent to Chief United States District Judge Brian S. Miller. A party to this dispute may file written objections to this recommendation. An objection must be specific and state the factual and/or legal basis for the objection. An objection to a factual finding must identify the finding and the evidence supporting the objection. Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1] The objecting party must serve the opposing party with a copy of an objection. Failing to object within 14 days waives the right to appeal questions of fact.[2] If no objections are filed, Judge Miller may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

## Recommended Disposition

Wayne Ray Harris seeks judicial review of the denial of his application for disability insurance benefits and supplemental security income.[3] Mr. Harris last worked full-time as a tire and lube technician for a Goodyear tire service center.[4] According to Mr. Harris, he stopped working in August 2008, because of back pain radiating down his left leg.[5] In December 2010, Mr. Harris applied for disability benefits and based disability on lower back problems, leg problems, and borderline diabetes.[6] He alleges disability since August 2008.[7]

**The Commissioner's decision**. After considering the application, the Commissioner's ALJ determined that Mr. Harris has a severe impairment — degenerative disc disease of the lumbar spine[8] — but that he could do some light work.[9]

---

[3] SSA record at pp. 152 & 159.

[4] *Id*. at pp. 180 & 185.

[5] *Id*. at pp. 71 & 195.

[6] *Id*. at p. 179.

[7] *Id*. at pp. 152, 159 & 179.

[8] *Id*. at p. 57.

[9] *Id*. at p. 58.

Because a vocational expert identified available work,[10] the ALJ determined Mr. Harris was not disabled and denied the application.[11]

After the Commissioner's Appeals Council denied a request for review,[12] the ALJ's decision became a final decision for judicial review.[13]  Mr. Harris filed this case to challenge the ALJ's decision.[14]  In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[15]  This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

---

[10]*Id*. at pp. 79-80.

[11]*Id*. at p. 62.

[12]*Id*. at p. 1.

[13]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[14]Docket entry # 1.

[15]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

**Mr. Harris's allegations**.  Mr. Harris claims his back prevents him from doing all work.  He relies on evidence of nerve root compression to argue that he is entitled to disability benefits under listing 1.04.  He argues that his neurosurgeon's statement about his pursuit of disability benefits was entitled to controlling weight.  He challenges the ALJ's evaluation of his credibility, arguing that his credibility should not depend on having back surgery.  For these reasons, he maintains, substantial evidence does not support the ALJ's decision.[16]

For substantial evidence to support the decision, a reasonable mind must accept the evidence as adequate to support the decision that Mr. Harris could do some light work.[17]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[18]  In this case, the ALJ reduced light work by occasional stooping, crouching, crawling and kneeling; and no balancing, climbing, or work hazards.[19]  The question before the court is whether a reasonable mind would accept the evidence as adequate to show that Mr. Harris could work within these limits.

---

[16]Docket entry # 17.

[17]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

[18]20 C.F.R. §§ 404.1567(b) & 416.967(b).

[19]SSA record at p. 58.

Evidence about back and leg pain.  Mr. Harris bases his claim, in substantial part, on disabling back pain radiating to his left leg, but the evidence about back and leg pain shows nothing preventing work within the defined limits.  Diagnostic imaging from January 2008 shows a herniated disc in the lumbar spine at level L4/5.[20]  The imaging is probative of Mr. Harris's claim because, "[d]epending on the location of the herniation, the herniated material can … press directly on nerve roots or on the spinal cord, causing a shock-like pain (sciatica) down the legs, weakness, numbness, or problems with bowels, bladder, or sexual function."[21]  Mr. Harris complained about some left-sided sciatica in early 2008.[22]  Sciatica is usually caused by lumbosacral radiculopathy or back strain.[23]  Mr. Harris had no radiculopathy.[24]  In December 2010 — on the day he applied for disability benefits — Mr. Harris no longer complained about sciatica; he also lacked radiculopathy.[25]  Thus, at the time Mr. Harris applied for disability benefits, he lacked the more troublesome symptoms of a herniated disc.

---

[20]*Id*. at p. 240 (left L5 nerve rootlet within canal may be impacted by left-sided disc heriation).

[21]Jeffrey P. Larson, 3 The Gale Encyclopedia of Med. 2112 (4th ed.).

[22]SSA record at p. 245.

[23]Julia Barrett, 5 The Gale Encyclopedia of Med. 3863 (4th ed.).

[24]SSA record at p. 245.

[25]*Id*. at p. 243.

Even with troublesome symptoms, Mr. Harris declined treatment. In 2008, Mr. Harris's neurosurgeon offered treatment options.[26] Offering options indicates that Mr. Harris's back pain could be controlled with treatment. Mr. Harris declined treatment and returned to work.[27] Thirty-three months later, Mr. Harris returned to his neurosurgeon and complained about worsening back pain, but he was not interested in treatment.[28] He was interested in disability benefits.[29]

During that visit, Mr. Harris talked about his intention to seek disability benefits. His neurosurgeon documented that intention in the treatment note. Mr. Harris characterizes the documentation as a treating-physician medical opinion deserving controlling weight, but it is best characterized as a treatment note. Even if the documentation presented a medical opinion, it does not further Mr. Harris's claim.

The relevant portion of the note is quoted below:

> Since I do not see this problem getting any better with age, his pain has been refractory to all conservative treatment options, I certainly believe it is reasonable for him to pursue longterm disability through Social Security. We talked about a referral for epidural steroid injections, but he

---

[26]*Id.* at pp. 243 & 245 (oral steroids, lumbar disc surgery, and epidural steroid injections).

[27]*Id.* at p. 245.

[28]*Id.* at p. 243.

[29]*Id.* (not interested in surgery; he can deal with his pain if he can get disability benefits).

> believes if he could get his disability he could deal with his pain without additional treatment.[30]

The first quoted statement implies that Mr. Harris's back pain resists treatment, but in actuality, the only treatment Mr. Harris has had was self-prescribed, over-the-counter pain relievers. He declined his neurosurgeon's recommendation for epidural steroid injections or surgery to repair the herniated disc.[31] He did not complete the prescribed course of oral steroids.[32] Failing to pursue these options weighs against Mr. Harris's credibility.[33] If his pain was so severe as to prevent all work, logically, he would pursue treatment to relieve his pain. Complaining about disabling back pain and functional limitation is inconsistent with the failure to pursue medical treatment.[34] A reasonable mind would accept the failure to pursue treatment as adequate to show Mr. Harris

---

[30]*Id.*

[31]*Id.* at pp. 243-44.

[32]*Id.* at p. 245.

[33]*Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005).

[34]*Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) (conservative course of treatment undermined claimant's claim of disabling back pain); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain and functional limitations are inconsistent with the failure to take prescription pain medication or to seek regular medical treatment for symptoms); *Haynes v. Shalala*, 26 F.3d 812, 814-15 (8th Cir. 1994) ("A lack of strong pain medication is inconsistent with subjective complaints of disabling pain."); *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988) ("A failure to seek aggressive treatment is not suggestive of disabling back pain.").

over-stated his pain and limitation; thus, substantial evidence supports the ALJ's credibility evaluation.

The neurosurgeon's second statement shows that Mr. Harris's back pain could be controlled by treatment, because the statement refers to a treatment option. "An impairment which can be controlled by treatment or medication is not considered disabling."[35] Failing "to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits."[36] Mr. Harris has no good reason for rejecting his neurosurgeon's prescribed course of treatment.[37] "As is true in many disability cases, there is no doubt that [Mr. Harris experiences] pain; the real issue is how severe that pain is."[38] Mr. Harris's statement that he could deal with his pain without treatment if he could get disability benefits is not a basis for obtaining disability benefits.

---

[35]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[36]*Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995).

[37]SSA record at pp. 73-74 (testifying that he declined epidural steroid injections because he heard it was dangerous and he declined surgery because his neurosurgeon said he can't fix his back).

[38]*Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

Between his last visit to the neurosurgeon and the date of the unfavorable decision, Mr. Harris sought treatment for other problems;[39] he complained about back pain once. On that occasion — in December 2011 — he had a limited range of motion in his back; he told his primary care physician (PCP) that his neurosurgeon was helping him with disability benefits based on his back.[40] The PCP prescribed a medication used to treat chronic musculoskeletal pain, but other than that, Mr. Harris has had no treatment. Despite the lack of treatment, his back had a full range of motion in January 2013.[41] Mr. Harris relies on the disc herniation for disability benefits under listing 1.04, but he does not meet all severity requirements.[42] The 2008 diagnostic imaging provides

---

[39]SSA record at p. 342 (on Mar. 8, 2011, for multiple complaints — lower jaw pain, history of dental issues, abdominal pain, numbness and tingling in arms; poor description of pain or location); p. 359 (on Mar. 15, 2011, for chest pain and jaw pain); p. 383 (on Mar. 15, 2011, for face swelling, jaws hurting, and pain from dental work; also, to discuss blood pressure); p. 371 (on Mar. 21, 2011, for dental pain); p. 382 (on May 31, 2011, for right heel pain and achy legs).

[40]*Id.* at p. 381.

[41]*Id.* at p. 39.

[42]Obtaining disability benefits under listing 1.04 requires the following medical findings:

[C]ompromise of a nerve root … or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss … accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test …; OR

some evidence of nerve root compromise, but there is no evidence that he met the other criteria. To obtain disability benefits based on a listing,[43] the claimant must have evidence of all specified criteria.[44]

Opinion evidence. Agency medical experts reviewed the record evidence and determined — "giving the [claimant] the benefit of the doubt" — that Mr. Harris could do the full range of light work.[45] The ALJ reduced the full range by postural limitations to accommodate Mr. Harris's complaints of back pain. A reasonable mind would accept the opinion evidence as adequate to support the determination that Mr. Harris could work within the defined parameters.

---

> B. Spinal arachnoiditis, … manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, … manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively ….

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

[43] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

[44] *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

[45] SSA record at pp. 260 & 379.

Vocational evidence. After determining Mr. Harris's ability to work, the ALJ asked a vocational expert about available work for a person with Mr. Harris's limitations.[46] The vocational expert identified light and sedentary work.[47] A person who can do light work can also do sedentary work.[48] The vocational expert's answers show work existed that Mr. Harris could do, regardless of whether such work existed where he lived, whether a job vacancy existed, or whether he would be hired if he applied for work.[49] Because such work existed, Mr. Harris was not disabled under social security disability law. A reasonable mind would accept the vocational evidence as adequate to show work Harris could work within the ALJ's parameters.

**Conclusion and recommendation**. Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the undersigned Magistrate Judge recommends DENYING Mr. Harris's request for relief (docket entry #2) and AFFIRMING the Commissioner's decision.

---

[46] *Id*. at p. 79.

[47] *Id*. at pp. 79-80 (identifying cafeteria attendant and janitor work as representative light work, and assembly jobs and inspector as representative sedentary work).

[48] 20 C.F.R. §§ 404.1567(b) & 416.967(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

[49] 42 U.S.C. § 1382c(a)(3)(B) (defining disability under social security disability law).

DATED this 17th day of April, 2014.

                                                  _____
                                                  UNITED STATES MAGISTRATE JUDGE